# No. 18-2652

Case No. 18-CV-2921 (JMF) (S.D.N.Y)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

In Re UNITED STATES DEPARTMENT OF COMMERCE, WILBUR L. ROSS, JR., in his official capacity as Secretary of Commerce, BUREAU OF THE CENSUS, and RON S. JARMIN, in his capacity as the Director of the U.S. Census Bureau, Petitioners.

**REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**

JOSEPH H. HUNT
  *Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
GERARD SINZDAK
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0718*

## INTRODUCTION AND SUMMARY

The federal government has asked this Court to issue a writ of mandamus to quash the deposition the district court has ordered of Acting Assistant Attorney General John Gore and to halt similar discovery in these cases challenging the decision of Secretary of Commerce Wilbur Ross to reinstate a citizenship question on the decennial census. As the government set forth in its petition, the district court's discovery orders, in particular its order compelling the deposition of Acting AAG Gore, contravene well-established principles of judicial review of agency decisionmaking. Mandamus relief is therefore warranted.

Plaintiffs' attempts to defend the district court's erroneous discovery orders are unavailing. Plaintiffs assert that "exceptional circumstances" justified the district court's order compelling the testimony of Acting AAG Gore because he possesses "unique" knowledge about the Secretary's decisionmaking process that cannot be obtained from other sources. But the only specific examples plaintiffs provide of Acting AAG Gore's allegedly "unique" knowledge are the contents of conversations he had with the Secretary's Chief of Staff and information about the usefulness of citizenship data to enforce the Voting Rights Act. In an extraordinary step for an administrative review case such as this, plaintiffs already have deposed the Secretary's Chief of Staff and they do not explain how deposing the Acting Assistant Attorney General regarding voting rights enforcement will shed light on the Secretary's decisionmaking process. The purported justification for permitting any discovery in

this case was the district court's mistaken conclusion that plaintiffs had made a threshold showing of "bad faith" on the part of the Secretary. There is no similar suggestion with regard to Acting AAG Gore and absolutely no basis to require his deposition.

Plaintiffs' assertions that the government unduly delayed in seeking to quash Acting AAG Gore's deposition are without foundation. The government does not lightly seek mandamus relief from this Court, and after careful consideration sought mandamus less than three weeks after the district court ordered the deposition and more than a month before the close of discovery. Plaintiffs were not in any way prejudiced by this timing, which has also provided this Court with the time necessary to evaluate the petition.

Not only is the district court's conclusion regarding bad faith related to the Secretary's decision insufficient justification for compelling Acting AAG Gore's deposition on its own terms, the district court's order is even more fundamentally flawed because that bad-faith determination itself was clearly erroneous, and thus no predicate existed for any discovery into the Secretary's decisionmaking process beyond the administrative record, much less the deposition of a high-ranking official of the Department of Justice. In attempting to defend the district court's erroneous bad-faith determination, plaintiffs fail to come to grips with the central point that there is no basis for doubting that the Secretary actually believed that the grounds cited in his memoranda justified the determination to include a citizenship question.

That is the relevant question in determining "bad faith," not whether the Secretary was already predisposed—perhaps even strongly—to adopt the question even before consulting with the Department of Justice.

Plaintiffs fare no better in arguing that the government unduly delayed its challenge to the district court's July 3 discovery order. Although the government has at all times objected to the district court's order, it declined to seek relief from the order in light of the district court's assurances that discovery would be limited in scope. Only when the district court expanded the discovery to include the deposition of a high-ranking Department of Justice official was the government compelled to seek relief from this Court of the clearly erroneous discovery order that led to that deposition.

## ARGUMENT

### THE COURT SHOULD EXERCISE ITS MANDAMUS AUTHORITY TO CORRECT ORDERS THAT DISREGARD ESTABLISHED PRINCIPLES OF JUDICIAL REVIEW OF AGENCY DECISIONS.

#### A. The District Court's Order Compelling the Deposition of Acting Assistant Attorney General Gore Should Be Quashed.

**1.** As the government explained in its mandamus petition, the district court committed clear error in ordering the deposition testimony of Acting Assistant Attorney General Gore. Pet. 22-26. Depositions of high-ranking government officials are justified only under "exceptional circumstances," *Lederman v. New York*

*City Dep't of Parks and Rec.*, 731 F.3d 199, 203 (2013), and plaintiffs' attempt to identify

such circumstances here are unavailing.

Plaintiffs assert (Govt.Pls.Br. 39; Private.Pls.Br. 21)[1] that exceptional

circumstances justify Acting AAG Gore's deposition because he has "unique first-

hand knowledge" about the December 2017 letter the Department of Justice sent to

the Census Bureau requesting that the Bureau reinstate a citizenship question (the

Gary Letter). But, like the district court, plaintiffs fail to establish that any "unique"

knowledge Acting AAG Gore might possess about the letter would be applicable to

"the litigated claims." *Lederman*, 731 F.3d at 203.

Plaintiffs suggest that Acting AAG Gore's testimony will "help the district

court evaluate the legitimacy of DOJ's claim that it needs citizenship data to enforce

the [Voting Rights Act.]" Govt.Pls.Br. 39; *see also* Private.Pls.Br. 22. But the agency

action plaintiffs challenge here is the Secretary's decision to reinstate a citizenship

question, not the Department of Justice's decision to write the Gary Letter. In any

event, the validity of the Department's view of the usefulness of the citizenship data is

to be judged on the record. *See Nat'l Audobon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir.

1997). And if the district court were to determine that the existing record is

insufficient on that point, the proper course would be to remand or to permit

---

[1] References to "Govt.Pls.Br" refer to the response brief filed by the plaintiffs in Case No. 18-2652, while references to "Private.Pls.Br." response brief filed by the plaintiffs in Case No. 18-2659. The reply briefs the government filed in the two cases are materially identical.

supplementation of the record, not to order the deposition of a high-ranking official. *See Camp v. Pitts*, 411 U.S. 138, 143 (1973). Nor do plaintiffs indicate why Acting AAG Gore is uniquely able to shed light on the legitimacy of the Department of Justice's view that the citizenship data will be useful for VRA enforcement. Indeed, plaintiffs themselves assert that they plan to introduce expert testimony explaining "the reasons that citizenship data are not necessary to enforce the VRA." *See* Govt.Pls.Br. 29.

Plaintiffs also posit (Govt.Pls.Br. 39) that AAG "Gore will be able to testify about conversations between himself and the Secretary's Chief of Staff," in which the two purportedly discussed reinstatement of the citizenship question. But, by definition, Acting AAG Gore does not possess "unique" knowledge about the conversations he had with another individual, and, as plaintiffs acknowledge, they already have deposed the Secretary's Chief of Staff. *See* Govt.Pls.Br. 40. That plaintiffs are unsatisfied with the responses they received from the Secretary's Chief of Staff (Govt.Pls.Br. 40) provides no basis for deposing Acting AAG Gore. *See Lederman*, 731 F.3d at 204 (plaintiffs were not entitled to depose the Mayor of New York City and a former Deputy Mayor merely because the primary government official who the plaintiffs deposed "claimed not to know any of the answers to the questions regarding the information plaintiffs needed from the Mayor and his former Deputy"). Moreover, any deliberations between Acting AAG Gore and Commerce

personnel are likely to be protected by privilege, rendering a deposition on such topics not only improper but pointless.

Plaintiffs fail to adequately explain why the content of Acting AAG Gore's communications with Department of Commerce officials cannot be obtained from those officials (most, if not all, of whom plaintiffs have deposed), or from the tens of thousands of pages of communications and other documents plaintiffs now possess. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (8th Cir. 2007) (Even where a high-ranking official has first-hand knowledge relevant to the claim being litigated, "discovery is permitted only where it is shown that other persons cannot provide the necessary information."); *In re United States*, 197 F.3d 310, 313-14 (8th Cir. 1999) (To depose a high-ranking official, plaintiffs must show, "at a minimum," that the official "possess[es] information essential to its case which is not obtainable from another source.").

Nor is it apparent why (as plaintiffs summarily assert) Acting AAG Gore's role in drafting the Gary Letter would provide him with singular knowledge of the *Secretary*'s decisionmaking process and whether the *Secretary* had other reasons for reinstating a citizenship question. Plaintiffs provide no reason to believe that Acting AAG Gore has such information, while the Secretary's closest aides (who plaintiffs have deposed and whose records they now possess) do not.

Plaintiffs commit the same error as the district court when they suggest that the government "failed to establish that making [Acting AAG] Gore available for a single

day of deposition would impose any undue burden on Gore or the DOJ."

Govt.Pls.Br. 40; Private.Pls.Br. 25.  Of course, the burden on Acting AAG Gore and

the Department of Justice extends beyond the "single day" that Acting AAG Gore

must sit for the deposition, as he and the Department must spend time and resources

preparing for the deposition.  But, in any event, as this Court and others have

observed, court-ordered depositions of high-ranking officials are problematic not

because they necessarily would be unduly burdensome in any particular case, but

rather because, if such depositions were routinely permitted, "officials would spend

'an inordinate amount of time tending to pending litigation.'"  *Lederman*, 731 F.3d at

203 (quoting *Bogan*, 489 F.3d at 423).  Plaintiffs' assertion that deposing Acting AAG

Gore in this case would not be "unusually or uniquely burdensome" thus misses the

point.  Private.Pls.Br. 25.

Plaintiff's argument (Private.Pls.Br. 20-21) that Acting AAG Gore is not a

high-ranking government official is similarly insubstantial.  The Assistant Attorney

General for the Department of Justice's Civil Rights Division is a Senate-confirmed

position whose occupant serves as the Attorney General's lieutenant with

responsibility for the day-to-day operation of one of the Department's seven litigating

divisions.[2]  The Assistant Attorney General for Civil Rights is responsible for the

---

[2] Assistant Attorney Generals are by no means low "rung[]" officers, as plaintiffs assert.  *See* Private.Pls.Br.21.  The position of Assistant Attorney General long pre-dates both the position of Deputy Attorney General (created by the Attorney

7

"[e]nforcement of all Federal statutes affecting civil rights" and the "authorization of litigation in such enforcement, including criminal prosecutions and civil actions and proceedings on behalf of the Government and appellate proceedings in all such cases." 28 C.F.R. § 0.50(a) (2014). Under the AAG's supervision, the Division's 600 employees pursue several thousand cases and investigations each year, involving the Nation's most significant and complex civil rights laws, including the Civil Rights Act of 1964, the Voting Rights Act of 1965, the Trafficking Victims Protection Act, the Americans with Disabilities Act, and the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act of 2009.

As noted in our petition, courts have exercised their mandamus authority to preclude compelled appearances at depositions or settlement conferences with regard to a range of officials with similarly significant responsibilities, including the Assistant Attorney General for the Tax Division, *United States v. U.S. Dist. Court for Northern Mariana Islands*, 694 F.3d 1051, 1059-62 (9th Cir. 2012); the Vice President's chief of staff, *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); the Attorney General and Deputy Attorney General, *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999); three members of the Board of the FDIC, *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995);

---

General in 1950) and Associate Attorney General (created by the Attorney General in 1977). That the Attorney General established two offices to aid in the overarching management of the Department of Justice in no way diminishes the critical, high-level role Assistant Attorneys General have played throughout the Department's history.

the FDA Commissioner, *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993); and

members of the Board of Parole, *United States Board of Parole v. Merhige*, 487 F.2d 25, 29

(4th Cir. 1973).[3]  That Acting AAG Gore is serving in an acting capacity is of no

moment.  *See* Private.Pls.Br. 21.  Acting AAG Gore performs the functions of the

Assistant Attorney General in light of the vacancy in that office.  An order compelling

his deposition would thus implicate the same concerns as would an order compelling

the deposition of a confirmed AAG.

Seeking to evade the "exceptional circumstances" standard, plaintiffs assert that

"[o]ther courts have applied the normal relevance and burden tests in evaluating

depositions of assistant attorneys general."  Private.Pls.Br. 21.  But the only authority

plaintiffs cite for that proposition, *United States v. Winner*, 641 F.2d 825 (10th Cir.

1981), was a criminal case in which the information sought from the Assistant

Attorney General for the Criminal Division was allegedly essential to the defendant's

---

[3] Plaintiffs wrongly assert (Private.Pls.Br. 21) that the government lacks a "clear and indisputable" right to mandamus relief because neither this Court nor others have yet applied the *Lederman* "exceptional circumstances" standard to an official at Acting AAG Gore's level.  As this Court has made clear, mandamus relief is particularly *appropriate* when a discovery ruling presents "novel and significant question of law." *In re City of New York*, 607 F.3d 923, 932 (2d Cir. 2010); *see also In re Securities and Exchange Commission*, 374 F.3d 184, 187 (2d Cir. 2004) (concluding that mandamus relief was justified in part *because* the petition presented an issue that "[n]either this circuit nor any other ha[d] squarely addressed").  In such cases, the "clear and indisputable" right standard is satisfied provided that the district court clearly errs in applying fundamental legal principles.  *See In re City of New York*, 607 F.3d at 944.  For the reasons explained in this brief and in the government's petition for mandamus, the district court did so here.

case and implicated the defendant's constitutional right to exculpatory information (and even so, the court did not ultimately order the Assistant Attorney General to appear). *Winner* provides no support for deposing an Assistant Attorney General in a civil case, particularly one challenging administrative agency action. *See Cheney v. U.S. Dist. Court for D.C.,* 542 U.S. 367, 370 (2004) ("The right to production of relevant evidence in civil proceedings does not have the same 'constitutional dimensions' as it does in the criminal context."). That is all the more true where, as here, the district court ordered an Acting Assistant Attorney General to appear for a deposition in litigation challenging another agency's action, the unprecedented nature of which plaintiffs do not contest.[4]

**2.** Plaintiffs' contentions that the government unduly delayed in seeking to quash Acting AAG Gore's deposition are without basis. Govt.Pls.Br. 36; Private.Pls.Br. 19. The government filed its mandamus petition less than three weeks

---

[4] Arguing that the deposition of Acting AAG Gore is not "unprecedented," plaintiffs note (Private.Pls.Br. 25) that the district court in *Citizens for Responsibility for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. 05-cv-2078 (EGS), 2006 WL 1518964, at *1 (D.D.C. June 1, 2006) ordered the Associate Attorney General to appear for a deposition. But *Citizens for Responsibility* was a Freedom of Information Act suit through which the plaintiffs sought, but did not receive, information from the Associate Attorney General's Office and in which there was evidence suggesting that the Associate's Office had acted unreasonably in responding to the plaintiff's request. *Id.* That the district court in *Citizens for Responsibility* ordered the Associate Attorney General to appear for a deposition under those circumstances does not support the district court's extraordinary decision in this case to order a high-ranking Department of Justice official to appear in an Administrative Procedure Act case challenging a different agency's action.

after the district court entered its order compelling Acting AAG Gore's deposition and less than a week after plaintiffs noticed the deposition, after engaging in appropriate evaluation before asking this Court for relief. The government filed its petition more than a month before the close of discovery on October 12, affording this Court ample time to rule on the petition before discovery ends. Plaintiffs thus were not in any way prejudiced by the timing of the government's filing or by the administrative stay of Acting AAG Gore's deposition that this Court has already entered.

Plaintiffs fare no better in arguing (Govt.Pls.Br. 37-38; Private.Pls.Br. 20) that the government waived its reliance on *Lederman*'s "exceptional circumstances" standard by failing to cite the standard in its opposition to plaintiffs' motion to compel. Although the government did not cite *Lederman* in its opposition to plaintiffs' motion to compel, it raised the substance of the issue. *See* Government Respondents' Appendix 72 (arguing that plaintiffs failed to justify "the deposition of a high-ranking DOJ official in a case where DOJ merely provided input to another agency, which then issued the decision being challenged," and that "[a] deposition would hinder AAG Gore from performing his numerous important duties as a high-ranking DOJ official"). And in any event, the district court's decision granting the motion to compel expressly recognized that "special considerations arise when a party attempts to depose a high level government official," Add. 2, and the court squarely addressed the merits of the government's argument that no exceptional circumstances justify

11

Acting AAG Gore's deposition in its order denying a stay of that deposition, Add. 191-93.  Because the district court addressed the merits of the government's *Lederman* argument rather than holding it forfeited, and because the court committed clear error in applying the standard set forth in that case, this Court has no basis to deny the government's request to quash Acting AAG Gore's deposition on forfeiture grounds. *See, e.g.*, *United States v. Nursing Personnel Home Care*, 794 F.3d 232, 235 (2d Cir. 2015) (noting that this Court does "not consider arguments waived" when those arguments were "passed on by the district court").

> ### B. The District Court Clearly Erred In Concluding That Extra-Record Discovery Was Justified in this Case.

Quashing Acting AAG Gore's deposition is particularly appropriate because the district court clearly erred at the threshold in concluding that extra-record discovery of any kind was warranted here.  *See, e.g.*, *In re Cheney*, 544 F.3d 311, 313 (D.C. Cir. 2008) (recognizing that mandamus may be warranted where "valid threshold grounds" could obviate the need for intrusive discovery against high-ranking officials); *cf. In re Securities and Exchange Commission*, 374 F.3d 184 (2d Cir. 2004) (granting the SEC's mandamus petition on threshold jurisdictional grounds and thereby avoiding the need to consider whether the district court abused its discretion in ordering two SEC attorneys to appear for depositions).  The court's conclusion that extra-record discovery was justified in this case contravened established principles of judicial review of agency action.  Pet. 16-22.  Rather than evaluating the Secretary's

decision to reinstate a citizenship question "on the record the agency present[ed] to the reviewing court," *Nat'l Audobon Soc'y v. Hoffman*, 132 F.3d 7, 14 (1997), and focusing on the "contemporaneous explanation" that the agency rested its decision upon, *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978), the district court permitted extra-record discovery designed "to probe the mental processes" of Secretary Ross and others, *United States v. Morgan*, 304 U.S. 1, 18 (1938), precisely what the law disallows.

The district court justified its departure from these settled principles on its conclusion that plaintiffs had made a strong showing that the Secretary's decision to reinstate the citizenship question was made in bad faith. Add. 85. As the government explained in its mandamus petition, that determination was based on a fundamental misunderstanding of what constitutes bad faith in the context of administrative decisionmaking. Pet. 17-21. The same fundamental principles of administrative law dictate that, where an agency provides an objective explanation for its actions, plaintiffs can demonstrate "bad faith" sufficient to support extra-record discovery only by establishing that the agency decisionmaker did not believe that objective rationale. *See* Pet. 18. The district court never articulated that proper legal standard or made the necessary finding, and plaintiffs do not argue otherwise.

Nor do any of the four factors the district court cited instead—taken separately or collectively—support such a finding or otherwise amount to a "strong showing of bad faith or improper behavior." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S.

13

402, 420 (1971). *See* Pet. 19-20.[5] Fairly construed, the evidence plaintiffs cite shows at most that Secretary Ross already desired to reinstate a citizenship question to the census even before consulting with DOJ, *so long as* there was a valid justification for doing so. This is neither unusual nor improper, and it does not remotely show that he "act[ed] with an 'unalterably closed mind' and [was] 'unwilling or unable' to rational consider arguments." *Air Transport Ass'n of Am., Inc. v. National Meditation Bd.*, 663 F.3d 476, 486-88 (D.C. Cir. 2011). It "would eviscerate the proper evolution of policymaking were we to disqualify every administrator who has opinions on the correct course of his agency's future actions." *Id.* at 488; *see also Jagers v. Federal Crop Ins. Corp.*, 758 F.3d 1179, 1186 (10th Cir. 2014) (a "subjective hope" that agency's favored course of action will be supportable does not "demonstrate improper bias on the part of agency decisionmakers"). And the fact that the Department of Commerce planned to provide the Department of Justice with information supporting the

---

[5] Contrary to the private plaintiffs' claim (Private.Pls.Br. 24), the government challenges each of the four factors the district court cited, including the court's conclusion that plaintiffs established a prima facie case of pretext with regard to the Secretary's reliance on the VRA enforcement rationale. The district court's assertion that DOJ had never previously suggested that citizenship data collected during the decennial census "would be helpful let alone necessary to litigating [VRA] claims," Add. 87, ignores the fact that for 30 years, from 1970 to 2000, DOJ used citizenship data from the long-form decennial census to enforce the VRA. Add. 180. And the bare fact that plaintiffs *alleged* that "the current Department of Justice has shown little interest in enforcing the VRA," Add. 87, does not remotely establish a prima facie case of pretext or call into question the Department of Justice's commitment to enforcing the VRA, *see* Pet. 24 n.7.

conclusion that census block citizenship information would be useful to the

Department of Justice in enforcing the Voting Rights Act, *see* Add. 182, is powerful

evidence that the Secretary both believed that such information would be useful to the

Department and that he was reserving final judgment on the reasonableness of that

belief until he heard from the Department.

Although plaintiffs argue that "[f]ederal courts have authorized extra-record

discovery under similar circumstances," Private.Pls.Br. 16, the cases they cite involved

facts far afield from the factors relied upon by the district court here.  In *Tummino v.*

*von Eschenbach*, 427 F. Supp. 2d 212, 232-33 (E.D.N.Y. 2006)), the district court

emphasized that the agency had forestalled judicial review of its decisionmaking

through inaction, and the court cited numerous additional factors not present here.

*See* Pet. 21 (distinguishing *Tummino*).  In *Inforeliance Corp v. United States*, 118 Fed. Cl.

744 (2014), the court ordered discovery based on "well-grounded allegations of bias"

by a bid evaluator in her contract-procurement decision.  *Id.* at 748.  While "even an

appearance of bias is considered damaging" in "quasi-adjudicative proceedings" like

the proceeding in *Inforeliance*, "the standard is less stringent" in "quasi-legislative

proceedings" like those that occurred here.  *Sokaogon Chippewa Community (Mole Lake*

*Band of Lake Superior Chippewa) v. Babbit*, 961 F. Supp. 1276, 1280 (W.D. Wisc. 1997).

The "view of a neutral and detached adjudicator is simply an inapposite role model

for an administrator who must translate broad statutory commands into concrete

social policies." *Association of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1165-66 (D.C. Cir. 1979).

Plaintiffs' remaining cases each involved evidence that agency decisionmakers were subject to "improper political pressure" from individuals outside of the Executive Branch. *Schaghitoke Tribal Nation v. Norton*, 2006 WL 3231419, at *4-5 (D. Conn. Nov. 3, 2006) (members of Congress and State officials); *see Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbit*, 961 F. Supp. 1276, 1280 (W.D. Wisc. 1997) (members of Congress); *New York v. Salazar*, 701 F. Supp. 2d 224, 241-42 (N.D.N.Y. 2010) (privately-hired lobbyist). No such finding of external political pressure was made here, and any discussions within the Executive Branch that proceeded the Secretary's decision do not pose legitimate concerns. *See Sierra Club v. Costle*, 657 F.2d 298, 408 (D.C. Cir. 1981) (rejecting notion that courts should "convert informal rulemaking into a rarified technocratic process, unaffected by political considerations or the presence of Presidential power"); *In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) ("Absent a showing of contrary provisions of law or contract . . . the fact that agency heads considered the preferences (even political ones) of other government officials concerning how [their] discretion should be exercised does not establish the required degree of bad faith or improper behavior."). Thus, even assuming the decisions cited by plaintiffs were correct in concluding that extra-record discovery was justified, they do not support the conclusion that it was warranted in this case.

Plaintiffs mistakenly assert (Govt.Pls.Br. 26-29) that the district court based its decision to permit extra-record discovery on the alternative grounds that the administrative record was incomplete and that expert testimony was needed. In its July 3 discovery order, the district court made clear that its decision to allow extra-record discovery was based solely on its conclusion that plaintiffs had made the requisite showing of bad faith, and that such discovery was warranted in addition to the supplementation of the administrative record and expert discovery. *See* Add. 84-85; *see also* Add. 90 ("I will allow plaintiffs to engage in discovery beyond the record. *Further*, I will allow for expert discovery."). At no point did the district court conclude, for example, that Acting AAG Gore's testimony was necessary to supplement the administrative record or to advance expert discovery, further underscoring that the court did not base its extra-record discovery order on those rationales.

There is no basis for plaintiffs' assertion that granting the government's mandamus petition would "waste [private and] public resources already expended on expert discovery" or "require [the district court] to adjudicate this dispute based on [an] incomplete record," as plaintiffs contend. Govt.Pls.Br. 22-23. The government is not seeking relief from those portions of the district court's July 3 order that require the government to supplement the administrative record or that permit expert discovery on collateral matters such as plaintiffs' standing and is not asking this Court to issue retrospective relief.

Plaintiffs in Case No. 18-2659 alternatively assert that extra-record discovery was permissible because their complaint includes an equal protection claim. Private.Pls.Br. 18. The district court rejected that argument, correctly reasoning that "the APA itself provides for judicial review of agency action that is 'contrary to' the Constitution." Add. 88; *see* 5 U.S.C. § 706(2)(B); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 & n.9 (6th Cir. 2017) (rejecting argument that constitutional claims warrant extra-record discovery and concluding that the plaintiff's constitutional claim was "properly reviewed on the administrative record"). Plaintiffs have not sought relief from that ruling, and it is not clear the extent to which discovery would be permitted beyond the APA if it were permitted at all. Plaintiffs' constitutional claim thus does not provide an independent basis for the district court's order permitting extra-record discovery in the manner it did here.

Plaintiffs also err in asserting (Govt.Pls.Br. 21; Private.Pls.Br. 14) that the government unduly delayed seeking relief from the district court's July 3 order permitting extra-record discovery. Although the government vigorously objected to plaintiffs' claim that extra-record discovery was justified and believes the district court's order allowing such discovery was clearly erroneous, it elected not to seek immediate relief from that order in light of the district court's assurances that discovery would be limited in scope. Add. 88-90. Only when the district court expanded discovery to order a virtually unprecedented deposition of a high-ranking official from the Department of Justice was the government compelled to ask this

Court for the extraordinary relief of mandamus against the discovery order that paved the road for that deposition. At a minimum, that threshold error underscores why mandamus relief is warranted for the deposition against Acting AAG Gore.

## CONCLUSION

For the foregoing reasons and for the reasons stated in the government's petition for writ of mandamus, this Court should grant the petition for writ of mandamus.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

/s/ Gerard Sinzdak
MARK B. STERN
GERARD SINZDAK
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0718*

SEPTEMBER 2018

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply brief complies with the word limit of Federal Rule of Appellate Procedure 21(d)(1) because it contains 4,720 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.

s/ Gerard Sinzdak  
GERARD SINZDAK

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2018, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished automatically by the appellate CM/ECF system on all other counsel.

s/ Gerard Sinzdak
GERARD SINZDAK